UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON MARINO, JOY MARINO, THOMAS MARINO, and LISA MARINO<br>Plaintiffs,<br>v.<br><br>PILOT TRAVEL CENTERS, LLC,<br>SOVEREIGN CONSULTING, INC.,<br>Defendants. | : : : : : : : : : | No. 5:14-cv-4672 |

### MEMORANDUM

**Defendant's Partial Motion to Dismiss, ECF No. 3- Granted**

**JOSEPH F. LEESON, JR.**                                                                                    **July 6, 2015**
**United States District Judge**

## I.   Introduction

On August 8, 2014, Plaintiffs filed a complaint against Pilot Travel Centers, LLC ("Pilot") and Sovereign Consulting, Inc. ("Sovereign"), for injuries arising from Plaintiff Jason Marino's alleged exposure to toxic fluids on March 21, 2014.  Compl., ECF No. 1.  Sovereign filed a partial Motion to Dismiss on September 3, 2014.  Mot. Dismiss, ECF No. 3.  For the reasons set forth below, the Motion will be granted.

## II.   Factual Background

The Complaint alleges that Defendant Pilot operates a Travel Center in Milford, Pennsylvania, which sells fuel, food, and merchandise to truck drivers and other travelers. Compl. ¶¶ 17-18.  Defendant Sovereign allegedly provided environmental consulting services to Pilot.  Compl. ¶ 25.  Plaintiffs allege that Pilot was cited multiple times by the Pennsylvania

1

Department of Environmental Protection ("DEP") for failing to safely maintain its underground fuel tanks at the Travel Center.  Compl. ¶¶ 29-36.

Plaintiffs allege that in early 2014, Sovereign began underground drilling for soil samples to test for fuel leaks in Pilot's underground tanks.  Compl. ¶¶ 37-38.  In February 2014, Sovereign allegedly struck and ruptured an underground waterline.  Compl. ¶ 39.  Plaintiff, Jason Marino ("Plaintiff"), alleges that Defendants hired Remco, Inc. to repair the underground waterline, but due to frigid temperatures, the work could not begin until March 21, 2014.  Compl. ¶¶ 40-41.  Plaintiff, a plumber employed by Remco, Inc., alleges that he dug a large pit into the ground to access the ruptured waterline.  Compl. ¶ 44.  The pit immediately filled with thick fluid.  Id.  Plaintiff alleges that although he used a pump to remove the fluid, it continuously seeped into the pit, rising as high as his mid-section.  Compl. ¶ 45.  Plaintiff alleges that he worked in the pit for approximately five (5) days unaware that the fluid was composed in large part of diesel fuel that had been leaking from Pilot's tanks.  Compl. ¶ 48.

The Complaint alleges that diesel fuel quickly absorbs into a person's skin and blood stream, and that acute exposure from inhalation and contact can cause renal failure and poisoning of the liver and kidneys.  Compl. ¶¶ 51-52.  Plaintiff alleges that Sovereign had obtained the results from soil tests by March 21, 2014, but failed to warn him of the dangers of exposure or that the soil was contaminated.  Compl. ¶¶ 43, 53-54.  Plaintiff further alleges that a consultant/engineer from Sovereign watched and monitored him as he worked, taking pictures of the fluid-filled pit.  Compl. ¶ 47.

Plaintiff alleges that within days of completing his work for Defendants, he began experiencing nausea, dizziness, fatigue, and difficulty eating.  Compl. ¶ 55.  On May 1, 2014, he went to the emergency room and was admitted to St. Luke's Hospital's Intensive Care Unit for

life threatening metabolic acidosis secondary to acute renal failure.  Compl. ¶ 57.  After testing, Plaintiff was advised that he suffers end stage renal failure and requires a kidney transplant, without which he will not survive.  Compl. ¶ 61.

Plaintiff alleges that he was placed on the kidney transplant list, but that it can take up to three years to find a matching donor.  Compl. ¶ 64.  Plaintiff's father, Thomas Marino, who is also named as a Plaintiff, agreed to donate his kidney to his son, but was not a match.  Compl. ¶ 65.  The Complaint alleges that in order to reduce Plaintiff's wait time on the transplant list, Thomas Marino has agreed to donate a kidney to the kidney bank, despite the significant health risks.  Compl. ¶ 66.

Plaintiff asserts a negligence claim against Pilot at Count I, Compl. ¶¶ 70-80; violations of the Storage Tank and Spill Prevention Act ("STSPA") against Pilot at Count II, Compl. ¶¶ 81-89; and in Count III, negligence against Sovereign, Compl. ¶¶ 90-99.  Additionally, the Complaint alleges a loss of consortium claim by Plaintiff's wife, Joy Marino, Count IV.  Compl. ¶¶ 100-101.  In Count V, Plaintiff Thomas Marino asserts a claim against all Defendants, Compl. ¶¶ 102-110, and his wife, Lisa Marino, raises a loss of consortium claim at Count VI.  Compl. ¶¶ 111-112.

Pilot filed an Answer to the Complaint asserting, inter alia, a crossclaim against Sovereign.  Answer, ECF No. 11.  Pilot argues that if Plaintiffs' allegations are proven, Sovereign is solely liable.  Id.

On September 3, 2014, Sovereign filed a Motion to Dismiss Counts V and VI.  Mot. Dismiss.  Sovereign asserts that it did not owe a legal duty to Thomas Marino, who made an independent decision to donate a kidney.  Id.  Sovereign contends that if Thomas Marino is dismissed as a Plaintiff, the loss of consortium claim for Lisa Marino must also be dismissed.  Id.

3

Sovereign argues that the Complaint fails to allege any facts to suggest a special relationship between Sovereign and Thomas Marino or Lisa Marino to create any legal duty. Id.

Plaintiffs respond that because Sovereign's reckless and negligent conduct placed Jason Marino at risk, the rescue doctrine provides that Sovereign is also liable to Thomas Marino for the injuries he suffers in rendering aid to his son. Resp., ECF No. 8. Plaintiffs argue that it was foreseeable that Thomas Marino would come to the aid of his son, who is suffering a life threatening injury due to Sovereign's conduct, and that Thomas Marino may recover damages he suffers as a result of his rescue attempt. Resp. 9. Plaintiffs contend that the loss of consortium claim for Lisa Marino is therefore also viable. Resp. 9-10.

### III.  Standard of Review

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing Twombly, 550 U.S. at 555)); see Fed. R. Civ. P. 8(a)(2). For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

5

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "Detailed factual allegations" are not required, id. at 678 (quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

**IV.     Discussion**

Under Pennsylvania's rescue doctrine, a "plaintiff may recover for injuries suffered in the course of a rescue if it can be shown that: 1) the defendant negligently caused the dangerous situation; 2) the person requiring rescue was in imminent peril or the rescuer reasonably believed that such peril existed; and 3) the rescuer's actions during the rescue were not reckless." Yurecka v. Zappala, 472 F.3d 59, 62 (3d Cir. 2006) (citing Pachesky v. Getz, 510 A.2d 776, 780-83 (Pa. Super. Ct. 1986)).  "In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the

6

standard required; (3) a causal connection between the conduct and the resulting injury;[1] and (4) actual[2] loss or damage resulting to the interests of another." Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366 (3d Cir. 1993). Under the second element of the rescue doctrine, the rescuer must reasonably believe that the peril is "'urgent and imminent.'" Yurecka, 472 F.3d at 62 (quoting Bell v. Irace, 619 A.2d 365, 369 (Pa. Super. Ct. 1993)); Flint v. Langer Transp. Corp., 762 F. Supp. 2d 735, 741 (D.N.J. 2011) (finding that the rescue doctrine did not apply because the plaintiff, who traveled several hours before helping a truck driver carrying hazardous material in an aluminum trailer transfer the chemicals into a stainless steel trailer, was not in "imminent peril"). The third element requires that the "rescuer" take some action. Schwartzman v. Delaware Coach Co., 264 A.2d 519, 520 (Del. Super. Ct. 1970) (concluding that the rescue doctrine was inapplicable because the plaintiff gave only a "verbal warning" that a vehicle was approaching).

This Court has been unable to find any court that has extended the rescue doctrine to the facts presented here. See, e.g., Pelzer v. Lockformer Co., No. 01-6485, 2005 U.S. Dist. LEXIS 14520, at *11 (N.D. Ill. July 6, 2005) (stating that "Illinois has not recognized a cause of action for an organ donor against a party whose alleged negligent acts caused an organ donee to need and undergo a transplant"). "Appeals courts in [Louisiana, New York,] Arizona, Michigan, and Missouri have also held that a kidney donor does not have a cause of action against the physicians whose negligent treatment of a patient made a transplant necessary." Dabdoub v. Ochsner Clinic, 802 So. 2d 651, 654 (5th Cir. 2000) (citing cases). These courts reason that the

---

[1] The rescue doctrine acts to establish "a causal connection" between a defendant's negligence and a plaintiff-rescuer's injury. Bole v. Erie Ins. Exch., 616 Pa. 479, 484 (Pa. 2012).

[2] "[S]peculative future injuries do not support a negligence tort claim." Abuhouran v. United States, 595 F. Supp. 2d 588, 595 (E.D. Pa. 2009).

defendant had no duty to the plaintiff-donor, and the plaintiff-donor "donated his or her kidney voluntarily with full knowledge of the consequences." Id.

Plaintiffs have not cited any authority for applying the rescue doctrine to the instant facts. Accordingly, Thomas Marino fails to state a claim for relief, and any amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that a district court may deny leave to amend when an amendment would be futile). Count V will be dismissed in its entirety.[3]

"It is well-established that, under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's recovery in tort." Szydlowski v. City of Philadelphia, 134 F. Supp. 2d 636, 639 (E.D. Pa. 2001). Consequently, because Lisa Marino's loss of consortium claim is derivative of Thomas Marino's claim, Count VI must also be dismissed. See Pusey v. Becton Dickinson & Co., 794 F. Supp. 2d 551, 565-566 (E.D. Pa. 2011) (dismissing the spouse's loss of consortium claim after granting summary judgment on the plaintiff's claims).

## V.   Conclusion

The rescue doctrine does not apply to provide a causal connection between Defendants' alleged negligence and the alleged injury to Thomas Marino, which he created by volunteering to

---

[3] Although the pending Motion to Dismiss was filed only by Sovereign, Thomas Marino also fails to state a claim against Pilot. See Bintliff-Ritchie v. Am. Reinsurance Co., 285 F. App'xx 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims sua sponte under Rule 12(b)(6)."); Kline v. Hall, No. 12-1727, 2012 U.S. Dist. LEXIS 175040, at *10-11 (M.D. Pa. Dec. 11, 2012) (deciding, after dismissing a claim against the other defendants, that the same claim should also be dismissed sua sponte against the remaining defendant even though he failed to challenge the claim in his motion to dismiss (citing Bethea v. Nation of Islam, 248 Fed. Appx. 331, 333 (3d Cir. 2007) (holing that "although disfavored, a sua sponte dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile")).

donate a kidney to a kidney bank.  The claim asserted by Thomas Marino and the derivative loss of consortium claim by Lisa Marino will be dismissed.

                                                BY THE COURT:


                                                */s/ Joseph F. Leeson, Jr.*_____
                                                JOSEPH F. LEESON, JR.
                                                United States District Judge