## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON MARINO AND JOY MARINO, h/w,**<br>**324 Diamond Street**<br>**Slatington, Pennsylvania 18080**<br>            and<br>**THOMAS MARINO AND LISA MARINO, h/w,**<br>**1405 Seville Drive**<br>**Slatington, Pennsylvania 18080,**<br>                                    **Plaintiffs,**<br><br>                        **v.**<br><br>**PILOT TRAVEL CENTERS, LLC**<br>**5508 Lonas Drive**<br>**Knoxville, Tennessee 37909-3221**<br>            and<br>**SOVEREIGN CONSULTING, INC.,**<br>**111-A North Gold Drive**<br>**Robbinsville, New Jersey 98691,**<br>                                    **Defendants.** | **Civil Action No.:  5:14-cv-04672 JLS**<br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### O R D E R

      **AND NOW**, this _____ day of _____, 2015, upon consideration of

the Daubert Motion of Defendant, Sovereign Consulting, Inc., to Preclude Plaintiffs' Proposed

Expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, from Testifying at the Time of

Trial, and any response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is

**GRANTED**.  It is further **ORDERED** that Plaintiffs' proposed expert witness, Mark A. Roberts,

M.D., Ph.D, MPH, M.Ed., FACOEM, is hereby prohibited from testifying at the time of trial.

                                        **BY THE COURT:**

                                        _____

                                        **JOSEPH F. LEESON, JR., JUDGE**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON MARINO AND JOY MARINO, h/w,**<br>**324 Diamond Street**<br>**Slatington, Pennsylvania 18080**<br>                and<br>**THOMAS MARINO AND LISA MARINO, h/w,**<br>**1405 Seville Drive**<br>**Slatington, Pennsylvania 18080,**<br>                                    **Plaintiffs,**<br><br>                        **v.**<br><br>**PILOT TRAVEL CENTERS, LLC**<br>**5508 Lonas Drive**<br>**Knoxville, Tennessee 37909-3221**<br>                and<br>**SOVEREIGN CONSULTING, INC.,**<br>**111-A North Gold Drive**<br>**Robbinsville, New Jersey 98691,**<br>                                **Defendants.** | **Civil Action No.:  5:14-cv-04672 JLS**<br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### *DAUBERT* MOTION OF DEFENDANT, SOVEREIGN CONSULTING, INC. TO PRECLUDE PLAINTIFFS' PROPOSED EXPERT, MARK A. ROBERTS, M.D., Ph.D., MPH, M.Ed., FACOEM, FROM TESTIFYING AT THE TIME OF TRIAL

Defendant, Sovereign Consulting, Inc. ("Sovereign"), by and through its attorneys, Post & Schell, P.C., hereby submits the instant <u>Daubert</u> Motion to Preclude Plaintiffs' Proposed Expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, from Testifying at the Time of Trial, and in support thereof, avers as follows:

1.       On August 8, 2014, Jason Marino and Joy Marino, h/w, and Thomas Marino and Lisa Marino, h/w, ("Plaintiffs") filed a Complaint against Pilot Travel Centers, LLC ("Pilot") and Sovereign arising from alleged personal injuries sustained by Plaintiff, Jason Marino, stemming from work performed by Mr. Marino at a Pilot owned and operated travel center

known as "Flying J Travel Plaza 710" in New Milford, Pennsylvania in March 2014. A true and correct copy of the Plaintiffs' Complaint is attached hereto as Exhibit "A."

2.    Defendant, Sovereign, provided environmental consulting services to Pilot. See Exhibit "A," ¶ 25.  In their Complaint, Plaintiffs allege that, in early 2014, Sovereign began underground drilling for soil samples to test for fuel leaks in Pilot's underground tanks. Id., ¶¶ 37-39.  Sovereign's subcontractor, Eichelbergers Drilling, Inc.,[1] performed the underground drilling activities during which an underground waterline was struck and ruptured.

3.    Plaintiffs allege that Defendants hired REMCO, Inc. to repair the underground waterline, but due to frigid temperatures, the work could not begin until March 21, 2014.[2] See Exhibit "A," ¶¶ 40-41.

4.    On March 21, 2014, Plaintiff, Jason Marino, a plumber employed by REMCO, Inc., performed work on the first day on the project including digging, climbing into the excavation, and grabbing the broken copper line. See Exhibit "B," Mr. Marino's deposition testimony, at pg. 135, ln. 1-4.  Plaintiff testified he first saw liquid "bubbling up" into the excavation when the hole was three feet deep. Id., at pg. 137, ln. 2; ln. 7-21. The water did not have a smell and Mr. Marino does not recall that it ever had a sheen to it. Id., at pg. 123, ln. 2; pg. 124, ln. 8; pg. 145, ln. 4 - pg. 146, ln. 17. The substance appeared to be water, mud and stones. Id., at pg. 139, ln. 18-23. It stayed the same color throughout the four days that he was on the job site. Id., at pg. 142, ln. 20-23. The soil also did not have a smell to it. Id., at pg. 179, ln. 10-23.  On the second day of the project, Monday, March 24, 2014, Mr. Marino and Mr. Parise re-initiated excavation to repair the broken water line. The excavation was made by Mr. Marino

---

[1] Eichelbergers Drilling, Inc. is not a party to this action.
[2] REMCO, Inc. was hired directly and solely by Pilot.

measuring approximately 9 feet wide, 9 feet long, and a depth of less than six feet. Id., at pg. 120, ln. 24 - pg. 121, ln. 22.

5.      Mr. Marino alleges that, as a result of the Defendants' actions, jointly and severally, he has suffered renal disease and kidney failure and requires a kidney transplant to survive due to alleged exposure to diesel fuel while working in the "pit" to repair the ruptured waterline at the travel center. See Exhibit "A," at ¶¶ 40-41, 44, 45, 48, 51, 52, 57, 61.

6.      Plaintiffs asserted claims of negligence and a violation of the Storage Tank and Spill Prevention Act ("STSPA") against Pilot.  See Exhibit "A," Count I, ¶¶ 70-80; Count II, ¶¶ 81-89.

7.      Plaintiffs also asserted, in Count III of the Complaint, negligence claims against Sovereign. See Exhibit "A," at ¶¶ 90-99.   Additionally, the Complaint alleges a loss of consortium claim by Plaintiff's wife, Joy Marino.[3]  See Exhibit "A," Count IV, ¶¶ 100-101.

8.      Sovereign filed an Answer to the Complaint asserting, *inter alia*, a crossclaim against Pilot. See ECF No. 40, Sovereign's Answer to Complaint.

9.      Pilot similarly filed an Answer to the Complaint asserting, *inter alia*, a crossclaim against Sovereign. See ECF No. 11, Pilot's Answer to Complaint.

10.      Plaintiffs have produced a report authored by its proposed expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM.  True and correct copies of the expert report and Curriculum Vitae of Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM are attached hereto as Exhibits "C" and "D," respectively.

---

[3] On July 6, 2015, this Honorable Court granted Sovereign's Motion to Dismiss Counts V and VI of the Complaint, which had asserted claims on behalf of Thomas Marino and Lisa Marino, and terminated them as Plaintiffs. See ECF No. 3 (Motion to Dismiss); ECF Nos. 42, 43 (This Court's Memorandum and Order).

11.     Dr. Roberts has opined that Mr. Marino "experienced a significant exposure to diesel fuel and weathered products" during the time that he worked at the Pilot Travel Center, which is directly related to his development of an acute kidney injury.  See Exhibit "C," at p. 8.

12.     As set forth more fully in the attached Memorandum of Law, Dr. Roberts must be precluded from testifying at the time of trial because his opinions are unreliable and do not pass muster under Federal Rule of Evidence 702, <u>Daubert v. Merrell Dow Pharm., Inc.,</u> 509 U.S. 579 (1993), and its progeny.

13.     More specifically, Dr. Roberts's testimony should be precluded because his opinions amount to pure speculation, are not supported by any testing, literature, studies or research and do not "fit" the facts of the case.

14.     Plaintiffs have not produced Dr. Roberts for his expert discovery deposition prior to this Court's deadline for filing <u>Daubert</u> Motions.  Accordingly, Sovereign reserves the right to supplement this <u>Daubert</u> Motion and accompanying Memorandum of Law with new and/or additional areas of argument after Dr. Roberts' deposition takes place.

**WHEREFORE**, Defendant, Sovereign Consulting, Inc., respectfully requests that this Honorable Court grant the instant <u>Daubert</u> Motion to Preclude Plaintiffs' Proposed Expert,  Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, from Testifying at the Time of Trial, and enter the attached form of Order.

**Respectfully submitted,**

**POST & SCHELL, P.C.**

**DATED: <u>September 23, 2015</u>**          **BY:   /S/ PATRICK C. LAMB**

**PATRICK C. LAMB, ESQUIRE
DREW L. MALLICK, ESQUIRE
ATTORNEYS FOR DEFENDANT,
SOVEREIGN CONSULTING, INC.**

4

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON MARINO AND JOY MARINO, h/w,**<br>**324 Diamond Street**<br>**Slatington, Pennsylvania 18080**<br>          **and**<br>**THOMAS MARINO AND LISA MARINO, h/w,**<br>**1405 Seville Drive**<br>**Slatington, Pennsylvania 18080,**<br>                              **Plaintiffs,**<br><br>                    **v.**<br><br>**PILOT TRAVEL CENTERS, LLC**<br>**5508 Lonas Drive**<br>**Knoxville, Tennessee 37909-3221**<br>          **and**<br>**SOVEREIGN CONSULTING, INC.,**<br>**111-A North Gold Drive**<br>**Robbinsville, New Jersey 98691,**<br>                              **Defendants.** | **Civil Action No.:  5:14-cv-04672 JLS**<br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE *DAUBERT* MOTION OF DEFENDANT, SOVEREIGN CONSULTING, INC., TO PRECLUDE PLAINTIFFS' PROPOSED EXPERT, MARK A. ROBERTS, M.D., Ph.D., MPH, M.Ed., FACOEM, FROM TESTIFYING AT THE TIME OF TRIAL**

**I.      MATTER BEFORE THE COURT**

Daubert Motion of Defendant, Sovereign Consulting, Inc. ("Sovereign"), to preclude Plaintiffs' proposed expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, from testifying at the time of trial.

**II.      STATEMENT OF THE QUESTION INVOLVED**

Have Plaintiffs established, under Daubert, that their proposed occupational medicine expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, will render reliable opinions at

the time of trial as to an alleged causal connection between the Plaintiff's alleged exposure to diesel fuel and his renal failure?

      Suggested answer: No.

## III.   <u>STATEMENT OF MATERIAL FACTS</u>

      In early 2014, Sovereign began underground drilling for soil samples to test for fuel leaks in underground tanks at a travel center known as "Flying J Travel Plaza 710" in New Milford, Pennsylvania, which was owned and operated by Defendant, Pilot Travel Centers, LLC ("Pilot"). <u>See</u> Exhibit "A," ¶¶ 37-39.  Sovereign's subcontractor, Eichelbergers Drilling, Inc., which is not a party to this action, performed the underground drilling activities during which an underground waterline was struck and ruptured.  Plaintiffs allege that Defendants hired REMCO, Inc. to repair the underground waterline, but due to frigid temperatures, the work could not begin until March 21, 2014. <u>See</u> Exhibit "A," ¶¶ 40-41.

      On March 21, 2014, Plaintiff, Jason Marino, a plumber employed by REMCO, Inc., performed work on the first day on the project including digging, climbing into the excavation, and grabbing the broken copper line. <u>See</u> Exhibit "B," Mr. Marino's deposition testimony, at pg. 135, ln. 1-4.  Plaintiff testified he first saw liquid "bubbling up" into the excavation when the hole was three feet deep.  <u>Id.</u>, at pg. 137, ln. 2; ln. 7-21. The water did not have a smell and Mr. Marino does not recall that it ever had a sheen to it. <u>Id.</u>, at pg. 123, ln. 2; pg. 124, ln. 8; pg. 145, ln. 4 - pg. 146, ln. 17. The substance appeared to be water, mud and stones. <u>Id.</u>, at pg. 139, ln. 18-23. It stayed the same color throughout the four days that he was on the job site. <u>Id.</u>, at pg. 142, ln. 20-23. The soil also did not have a smell to it. <u>Id.</u>, at pg. 179, ln. 10-23.   On the second day of the project, Monday, March 24, 2014, Mr. Marino and Mr. Parise re-initiated excavation to repair the broken water line. The excavation was made by Mr. Marino measuring

approximately 9 feet wide, 9 feet long, and a depth of less than six feet. Id., at pg. 120, ln. 24 - pg. 121, ln. 22.

Mr. Marino alleges that as a result of the Defendants' actions, jointly and severally, he has suffered renal disease and kidney failure and requires a kidney transplant to survive due to his alleged exposure to diesel fuel while working in the "pit" to repair the ruptured waterline at the travel center. See Exhibit "A," at ¶¶ 40-41, 44, 45, 48, 51, 52, 57, 61.

Plaintiffs have produced a report authored by its proposed expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM.   True and correct copies of the expert report and Curriculum Vitae of Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM are attached hereto as Exhibits "C" and "D," respectively.  Dr. Roberts has opined that Mr. Marino "experienced a significant exposure to diesel fuel" during the four days that he worked at the Pilot Travel Center, which is directly related to his development of an acute kidney injury.  See Exhibit "C," at p. 8.

Plaintiffs have not produced Dr. Roberts for his expert discovery deposition prior to this Court's deadline for filing Daubert Motions.   Accordingly, Sovereign reserves the right to supplement its Daubert Motion and accompanying Memorandum of Law with new and/or additional areas of argument after Dr. Roberts' deposition takes place.

**IV.**   **ARGUMENT**

      **A.**   **STANDARD FOR THE PRECLUSION OF EXPERT TESTIMONY**

Federal Rule of Evidence 702, governing the admission of expert testimony, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. An expert's opinions must meet the "trilogy of restrictions on expert testimony: qualification, reliability and fit." Scheider v. Fried, 320 F. 3d 396, 404 (3d Cir. 2003); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. Rapp v. Singh, 152 F. Supp. 2d 694, 705 (E.D. Pa. 2001).

It is well settled that, in addition to being qualified to testify in an expert capacity, an expert witness whose testimony is offered by a party must base his opinions on reliable methodology. Specifically,

> the expert's opinion must be based on the methods and procedures
> of science rather than on subjective belief or unsupported
> speculation; the expert must have good grounds for his or her
> belief. In sum, Daubert holds that an inquiry into the reliability of
> scientific evidence under Rule 702 requires a determination as to
> its scientific validity.

In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (internal quotations and citations omitted).  To determine reliability, trial courts are directed to consider the following factors:

> (1) whether a method consists of a testable hypothesis;
>
> (2) whether the method has been subject to peer review;
>
> (3) the known or potential rate of error;
>
> (4) the existence and maintenance of standards controlling the
> technique's operation;
>
> (5) whether the method is generally accepted in the scientific
> community;
>
> (6) the relationship of the technique to methods which have been
> established to be reliable;

(7) the qualifications of the expert witness testifying based on the methodology; and

(8) the non-judicial uses to which the method has been put.

Id., at 742 n.8.

In applying the above factors, the Third Circuit has found that expert testimony is properly excluded as unreliable when there has been inadequate or no testing or if the expert failed to provide sufficient evidence of his methodology.  See e.g., Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000), cert. denied, 532 U.S. 921 (2001); Booth v. Black & Decker, 166 F. Supp. 2d 215, 216-17 (E.D. Pa. 2001). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

To be admissible under Rule 702, expert testimony must "fit," or be relevant to, the facts at issue in the case. In re Paoli, 35 F.3d at 743. As a result, "such testimony will be admissible only if the research is sufficiently connected to the facts and issues presented in a given case." Id. at 743. In other words, there must be "a valid scientific connection" between the expert's testimony and the facts and issues in the case in order for the expert's testimony to be admissible. Id. Courts will "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."  Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999).  "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  General Elec. v. Joiner, 522 U.S. 136, 146 (1997).

In toxic tort cases, courts of this Circuit have analyzed an expert's opinion on the causal connection between a plaintiff's injuries and the hazardous exposure by conducting two separate causation inquiries. First, the expert should address general causation, which refers to whether

the substance is capable of causing the observed harm generally. Second, the expert should address specific causation, which refers to whether the substance actually caused the harm a particular individual suffered. Pritchard v. Dow Agro Sciences, 705 F. Supp. 2d. 471, 483 (W.D. Pa. 2010), aff'd, 430 F. App'x 102 (3d Cir. 2011); Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584 (D. N.J. 2002), aff'd, 68 F. App'x 356 (3d Cir. 2003). General causation is typically established in toxic tort cases with the use of epidemiological studies; epidemiology is the "primary generally accepted methodology for demonstrating a causal relation between a chemical compound and a set of symptoms or a disease." Pritchard, 705 F. Supp. 2d at 483 (citations omitted).

### B.   DR. ROBERTS' TESTIMONY SHOULD BE PRECLUDED AT THE TIME OF TRIAL BECAUSE HIS OPINIONS ARE UNRELIABLE AND DO NOT "FIT" THE FACTS OF THIS CASE

Dr. Roberts authored a report dated August 14, 2015, in which he opined that Mr. Marino "experienced a significant exposure to diesel fuel and weathered product" during the time that he worked at the Pilot Travel Center, which is directly related to his development of an acute kidney injury. See Exhibit "C," at p. 8. Dr. Roberts came to this conclusion without performing any independent testing. Moreover, the case studies, animal studies and articles to which he cited in his report do not support a causal connection between the Plaintiff's alleged exposure to diesel fuel and "weathered product" and an acute kidney injury superimposed on a chronic kidney condition resulting in irreversible renal failure. See Daubert Motions and Memoranda of Law to Preclude Dr. Colvin and Dr. Jenkins (who relied upon the same studies), which are incorporated by referenced herein. Furthermore, in formulating his opinion, Dr. Roberts relies upon the incompetent and unreliable opinions of Dr. Jenkins concerning the extent of the Plaintiff's alleged skin and inhalation exposure to "diesel fuel [weathered product]". See Exhibit "C," at p. 4.

6

There is no valid, scientific connection between Plaintiff's alleged exposure to diesel fuel and his renal failure.  Plaintiffs' experts, including Dr. Roberts, have all failed to determine the cause of Mr. Marino's long-standing degenerative kidney disease.  See e.g., Exhibit "C," at p. 7.  Yet these same experts claim to be qualified to say that this unknown disease process was accelerated by an undefined exposure to either diesel fuel or components of diesel fuel.  Further, Plaintiffs' nephrology expert, Dr. Brown, clearly stated that the same acceleration of the disease process could have occurred had Mr. Marino contracted a "bad case of the flu."  See Exhibit "E," Dr. Browns' Deposition Transcript, at pg. 53, ln 8-13.  The opinions of Plaintiffs' experts are not based in any reliable science.   These experts have merely cherry picked one potential cause out of many to support an argument that was created for litigation.   Not one expert has treated or had first-hand experience with a prior case of exposure to diesel fuel leading to the acceleration of End Stage Renal Disease.  In fact, these experts had to dig through the literature to attempt to find some support for their theories, eventually ending up with four dissimilar case reports and a limited unreliable study whose author admitted its shortcomings.

As noted above, Plaintiffs have not produced Dr. Roberts for his expert discovery deposition prior to this Court's deadline for filing Daubert Motions.  Accordingly, Sovereign reserves the right to supplement this Daubert Motion and accompanying Memorandum of Law with new and/or additional areas of argument after Dr. Roberts' deposition takes place.

Based upon all of the foregoing (as well as any Supplemental Memorandum of Law to be filed after Dr. Roberts' deposition), Sovereign submits that Dr. Roberts' opinions are unreliable, not supported by good grounds and do not fit the facts of this case.  Dr. Roberts, therefore, should be barred from testifying at trial.

**V.**     **CONCLUSION**

       Based upon all of the foregoing considerations and authorities, Defendant, Sovereign Consulting, Inc., respectfully requests that this Honorable Court grant the instant Daubert Motion to Preclude Plaintiffs' Proposed Expert, Mark A. Roberts, M.D., Ph.D, MPH, M.Ed., FACOEM, from Testifying at the Time of Trial, and enter the attached form of Order.

                                **Respectfully submitted,**

                                **POST & SCHELL, P.C.**

                            **BY:**   **/S/ PATRICK C. LAMB**

**DATED:** September 23, 2015           **PATRICK C. LAMB, ESQUIRE**
                                  **DREW L. MALLICK, ESQUIRE**
                                  **ATTORNEYS FOR DEFENDANT,**
                                  **SOVEREIGN CONSULTING, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

PATRICK C. LAMB, ESQUIRE hereby states that a true and correct copy of the foregoing <u>Daubert</u> Motion and supportive Memorandum of Law were electronically filed with the Court and are available for viewing and downloading on the ECF system.  In addition, a true and correct copy of the foregoing <u>Daubert</u> Motion and supportive Memorandum of Law were served electronically by the Court ECF system upon counsel of record.

**POST & SCHELL, P.C.**

**BY**:   **<u>/S/ PATRICK C. LAMB</u>**

**DATED:** <u>September 23, 2015</u>          PATRICK C. LAMB, ESQUIRE
                     DREW L. MALLICK, ESQUIRE
                     Attorneys for DEFENDANT,
                     SOVEREIGN CONSULTING, INC.