# Exhibit A

FILED AUG - 8 2014



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

JASON MARINO and JOY MARINO, h/w
324 Diamond Street
Slatington, Pennsylvania 18080
  and
THOMAS MARINO and LISA MARINO, h/w
1405 Seville Drive
Slatington, Pennsylvania 18080,

                   Plaintiffs,          :  CIVIL ACTION

    v.

PILOT TRAVEL CENTERS, LLC
5508 Lonas Drive                                      14     4672
Knoxville, Tennessee, 37909-3221
  and
SOVEREIGN CONSULTING, INC.
111-A North Gold Drive
Robbinsville, New Jersey 98691,

                                    JURY TRIAL DEMANDED
                  Defendants.

## CIVIL ACTION COMPLAINT

### I. PARTIES

1. Plaintiff, Jason Marino, is a 32 year-old individual, *sui juris*, and resides at 324 Diamond Street, Slatington, Pennsylvania 18080.

2. Jason Marino is a citizen of the Commonwealth of Pennsylvania.

3. Jason Marino is married and has two children -- ages 3 and 5 -- and at all times material hereto Jason Marino was employed as a plumber.

4. As a direct result of Defendants' reckless and negligent conduct set forth below, Jason Marino suffers, *inter alia*, acute renal disease and kidney failure, and requires a kidney transplant to survive.

5. Plaintiff, Joy Marino, is an adult individual, *sui juris*, and resides at 324 Diamond Street, Slatington, Pennsylvania 18080.

6. Joy Marino, who is married to Plaintiff Jason Marino, is a citizen of the Commonwealth of Pennsylvania.

7. As a direct result of Defendants' reckless and negligent conduct set forth below, Joy Marino suffered, and will continue to suffer, the loss of her husband's consortium.

8. Plaintiff, Thomas Marino, is an adult individual, *sui juris*, and resides at 324 Diamond Street, Slatington, Pennsylvania 18080.

9. Thomas Marino, who is Jason Marino's Father, is a citizen of the Commonwealth of Pennsylvania.

10. Lisa Marino, who is married to Plaintiff Thomas Marino, is a citizen of the Commonwealth of Pennsylvania.

11. As a direct result of Defendants' reckless and negligent conduct set forth below, Lisa Marino suffered, and will continue to suffer, the loss of her husband's consortium.

12. Defendant, Pilot Travel Centers, LLC ("Pilot"), is a limited liability company created under the laws of the State of Delaware.

13. Pilot is registered with the Delaware Department of State under file number 3382581, and maintains its principal place of business at 5508 Lonas Drive, Knoxville, Tennessee 37909-3221.

14. No member of Pilot is a citizen of the Commonwealth of Pennsylvania.

15. At all times material hereto, Pilot acted by and through its members, employees, agents, ostensible agents, workmen and/or servants, and is vicariously liable for the reckless and negligent conduct of its members, employees, agents, ostensible agents, workmen and/or

servants.

16. Pilot owns and operates over three hundred (300) retail fuel and travel centers ("Travel Centers") in more than forty (40) states, including Pennsylvania.

17. Pilot's Travel Centers sell fuel, food, and merchandise to truck drivers and other on-the-road travelers.

18. At all times material hereto, Pilot owned and operated the Travel Center known as "Flying J Travel Plaza 710" -- referred to herein as "Plaza 710" -- which is located at 1623 Oliver Road, New Milford, Pennsylvania 18834-7517.

19. Defendant, Sovereign Consulting, Inc. ("Sovereign"), is a corporation that is incorporated for purposes of citizenship in the State of New Jersey.

20. Sovereign maintains its principal place of business at 111-A North Gold Drive, Robbinsville, New Jersey 98691.

21. At all times material hereto, Sovereign acted by and through its employees, agents, ostensible agents, workmen and/or servants, and is vicariously liable for the reckless and negligent conduct of its employees, agents, ostensible agents, workmen and/or servants.

22. Sovereign purports to be "an environmental consulting and remediation firm based in New Jersey, with offices located throughout the country, providing assessment, engineering, construction management, and remediation services to clients throughout the U.S." See www.sovcon.com/index.php/markets/petroleum.

23. Among other endeavors, Sovereign "manages environmental programs for petroleum companies" and performs "environmental services at more than 800 service stations, terminals, and refineries in the U.S." Id.

24. At all times material hereto, Sovereign provided environmental consulting and

3

remediation services out of its Pennsylvania office located at 50 West Welsh Pool Road, Suite 6, Exton, Pennsylvania 19341.

25.     At all times material hereto, Sovereign performed environmental consulting services for Pilot at Plaza 710.

## II. JURSIDICTION

26.     This Court has original jurisdiction under 28 U.S.C.S. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds One Hundred Fifty Thousand Dollars ($150,000.00).

## III. VENUE

27.     Sovereign maintains offices in the Eastern District of Pennsylvania (Exton, Pennsylvania) and regularly and continuously conducts business in this judicial district. The work performed by Sovereign that is the subject of this complaint was performed out of the Exton, Pennsylvania office. This Court therefore has personal jurisdiction over Sovereign, and venue is proper in this judicial district under 28 U.S.C.S. § 1391(b)(1) and (d).

28.     Pilot owns and operates several Travel Centers throughout Pennsylvania, and this Court has personal jurisdiction over Pilot as a result of its business activities in this Commonwealth. Because Pilot is subject to the Court's personal jurisdiction, and because venue is proper in this judicial district with respect to Sovereign, venue also is proper with respect to Pilot pursuant to 28 U.S.C.S. § 1391(b)(1) and (c)(2).

## IV. FACTS

29.     Between October 2003 and November 15, 2013, Pilot was cited **multiple** times by the Pennsylvania Department of Environmental Protection (DEP) for failing to safely maintain its underground fuel tanks at Plaza 710.

4

30. In 2003 alone, the DEP cited Pilot for at least thirty-six (36) violations of Pennsylvania safety regulations governing the underground fuel tanks at Plaza 710. In particular, the DEP cited Pilot for the following:

- thirty (30) violations of 25 Pa. Code 245.435, based on Pilot's "failure to comply with underground storage tank system reporting and recordkeeping requirements"; and

- six (6) violations of 25 Pa. Code 245.431 and 245.433, based on Pilot's failure to control "spill and overfill" in its fuel tanks.

31. Between 2009 and 2012, the DEP issued Pilot another array of citations for its failure to maintain its underground fuel tanks in compliance with multiple safety regulations. Pilot's safety violations included, *inter alia*:

- four (4) violations of Pa. Code 245.441, 245.442, 245.443, 245.444, and 245.446, based on Pilot's "failure to comply with underground storage tank system release detection requirements"; and

- six (6) violations of Pa. Code 245.432, based on Pilot's "failure to meet underground storage tank system operational requirements.

32. Prior to November 15, 2013, Pilot learned that its underground tanks at Plaza 710 were leaking diesel fuel.

33. The DEP inspected Plaza 710 and again discovered a myriad of safety violations involving Pilot's underground fuel tanks.

34. On November 15, 2013, as a result of its investigation, the DEP cited Pilot for four (4) violations of 25 Pa. Code 245.304, **based on Pilot's failure to investigate "suspected release[s]" in its underground fuel tanks.**

35. In addition to citing Pilot for **failing to investigate suspected fuel leaks in its underground tanks**, the DEP also cited Pilot for the following:

- four (4) violations of 25 Pa. Code 245.421, based on Pilot's "failure to meet performance standards for new/upgraded tanks";

- four (4) violations of 25 Pa. Code 245.432, based on Pilot's "failure to meet underground storage tank system operational requirements";

- one (1) violation of 35 P.S. 6021.1310, based on Pilot's "unlawful conduct" in failing to comply with safety regulations regarding its underground diesel fuel tanks.

36. In late 2013 or early 2014, Pilot retained defendant Sovereign to conduct underground environmental testing at Plaza 710 as part of the Department of Environmental Protection's remediation requirements.

37. In late January / early February 2014, Sovereign commenced underground drilling to test for fuel leakage in Pilot's underground tanks.

38. Sovereign drilled underground for soil samples that would be tested for the presence of diesel fuel.

39. In early February 2014, Sovereign struck and ruptured an underground waterline while drilling for soil samples at Plaza 710.

40. Sovereign and/or Pilot subsequently hired Remco, Inc. to repair the underground waterline at Plaza 710. At all times material hereto Plaintiff, Jason Marino, was a plumber employed by Remco, Inc.

41. Because frigid temperatures and inclement weather rendered the ground too frozen to excavate, Jason Marino could not commence work at Plaza 710 until March 21, 2014.

42. In the meantime, the water was shut off for the ruptured waterline.

43. Upon information and belief, by the time Jason Marino commenced work at Plaza 710 on March 21, 2014, Sovereign had already obtained the results of its soil sampling but failed to inform Jason Marino of these results.

44. When Jason Marino dug into the ground to access the ruptured waterline, the

large pit that he dug immediately filled with thick fluid, despite the fact that the water remained shut off.

45. Although Jason Marino used a pump to remove the thick fluid, the fluid continuously seeped into the pit and rose as high as Jason Marino's knees and mid-section. In fact, so much fluid was leaking into the pit that the pump burnt out and a pump truck from an outside vendor was brought in to help evacuate the fluid from the pit so that repairs could be made.

46. Jason Marino worked in the pit for approximately five (5) days, often on his hands and knees and therefore submerged in the fluid up to his waist.

47. A consultant/engineer from Sovereign, who watched and monitored Jason Marino as he worked, meanwhile took pictures of the fluid-filled pit as part of his investigation of the diesel fuel leaks.

48. Unbeknownst to Jason Marino at the time -- ***but known to Defendants*** -- the underground fluid that saturated Jason Marino was composed in large part of diesel fuel leaking from Pilot's fuel tanks.

49. Pilot knew of its leaking fuel tanks because of the *multiple* DEP citations.

50. Sovereign knew of the leaking fuel tanks because they were the subject of Sovereign's consulting and remediation services, because Sovereign's agents saw first-hand the leaking fuel that permeated the soil, and because Sovereign took soil samples at Plaza 710.

51. Diesel fuel, in its liquid form, quickly absorbs into a person's skin upon contact and penetrates the person's blood stream. The fumes from diesel fuel, if inhaled, can rapidly enter the blood stream.

52. Acute exposure to diesel fuel through inhalation and contact with the skin, such as

that which Jason Marino endured, causes renal failure and poisoning of the liver and kidneys.

53. Despite their knowledge of the underground diesel fuel leaks, Defendants never warned Jason Marino or his employer of the known dangers. Nor did Defendants offer, or even suggest the use of, protective gear to prevent the absorption of the toxic fuel into Jason Marino's body.

54. Defendants never warned Jason Marino of the diesel fuel leaks that plagued Plaza 710's fuel tanks for **several years**, or of the dangers of unprotected exposure to diesel fuel.

55. In April 2014, within days of completing his work at Plaza 710, Jason Marino experienced nausea, dizziness, excessive tiredness, and difficulty eating.

56. Jason Marino had retained his work clothes and pump, which have since tested positive for the significant presence of diesel fuel.

57. On May 1, 2014, Jason Marino presented to the emergency room of St. Luke's Hospital & Health Network and ultimately was admitted to the Hospital's Intensive Care Unit for life threatening metabolic acidosis secondary to acute renal failure.

58. Jason Marino remained hospitalized for eight days, during which his condition was worked up.

59. Pathology studies revealed, inter alia, that Jason Marino had sustained severe glomerulosclerosis, which is scarring of the small vessels of the kidneys that filter urine from the blood.

60. Jason Marino was advised that the acute scarring of his kidneys and related renal dysfunction was not reversible.

61. Jason Marino was further advised by his treating physicians that he suffers end stage renal failure and requires a kidney transplant, without which he will not survive.

62. Jason Marino is currently on dialysis three times per week.

63. Jason Marino, as a result of dialysis, is currently at increased risk of death, cardiac arrhythmia, development of cardiac disease, low blood pressure, direct perfusion related injuries, infection, systemic inflammation, anemia, bone disease, fluid overload, amyloidosis, depression, anxiety and reduced appetite.

64. Jason Marino has been placed on a kidney transplant list. The wait for a kidney is as long as three years.

65. Jason Marino's father, Thomas Marino, had agreed to donate one of his kidneys to his son, but he is an inadequate match, which precludes transplant.

66. Therefore, in an effort to reduce his son's wait time for a kidney from the kidney bank and thereby reduce the risks of dialysis, including death, Thomas Marino has agreed to donate a kidney to the kidney bank for use by some other recipient in order to obtain a matching kidney from the kidney bank for his son on an accelerated basis.

67. To date, Jason Marino is still waiting for a matching kidney.

68. Following Jason Marino's transplant, he will have significant risks and limitations related to the risk of organ rejection and living with a single kidney.

69. Following Thomas Marino's donor surgery, he will have significant risks and limitations related to living with a single kidney.

### COUNT I -- NEGLIGENCE
### JASON MARINO v. PILOT TRAVEL CENTERS, LLC

70 Plaintiffs incorporate the averments contained in paragraphs one (1) through sixty-nine (69), above, as though they are fully set forth below.

71. At all times material hereto, Jason Marino was an invitee on Pilot's property.

72. At all times material hereto, Pilot acted by and through its members, employees,

agents, ostensible agents, workmen and/or servants, and is vicariously liable for the reckless and negligent conduct of its employees, agents, ostensible agents, workmen and/or servants.

73. The reckless and negligent conduct of Pilot, which caused Jason Marino to suffer severe, permanent, and life-threatening injuries, included, *inter alia*:

   a. Failing to maintain its underground diesel fuel tanks;

   b. Failing to investigate and remedy the known, hazardous, leaks in its underground diesel fuel tanks;

   c. Failing to upgrade its diesel fuel tanks to comply with governmental safety regulations promulgated to prevent hazardous fuel leaks;

   d. Failing to operate its diesel fuel tanks in compliance with governmental safety regulations promulgated to prevent underground fuel leaks;

   e. Failing to inform Jason Marino of its fuel tank leaks despite knowledge of the health hazard;

   f. Allowing Jason Marino to excavate its property despite knowledge that its underground soil was saturated with hazardous diesel fuel;

   g. Failing to monitor and supervise Jason Marino's work to ensure he was not exposed to the hazardous conditions on its property;

   h. Allowing excavation to occur on its underground water pipe without first fixing its leaking and hazardous underground fuel tanks;

   i. Allowing excavation on its property without first ensuring that its leaking underground fuel tanks would not expose workers, including Jason Marino, to hazardous diesel fuel;

   j. Negligence *per se* for violating safety regulations intended to prevent the harms suffered by Jason Marino; and

   k. Knowingly exposing Jason Marino to hazardous conditions on its property.

74. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino sustained severe, permanent, and life-threatening injuries, including, *inter alia*: kidney failure, end stage renal disease, extreme physical pain/discomfort, severe nausea, loss of appetite,

severe dizziness, fatigue, mental anguish, and depression.

75. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino has lost all functionality in both kidneys and requires a kidney transplant.

76. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino must undergo an invasive, life-saving surgical procedure and will have restrictions and risks for the remainder of his life related to living with only one kidney.

77. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino has been compelled to expend large sums of money for medicine and medical attention and will expend additional sums for the same purposes in the future.

78. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino has suffered in the past, and will suffer in the future, an inability to perform his usual and daily duties, labors, occupations, and avocations.

79. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino has suffered physical pain, mental anguish, humiliation, and the loss of life's pleasures, and he will continue to suffer the same for an indefinite time in the future.

80. As a direct and proximate result of Pilot's recklessness and negligence, Jason Marino has suffered in the past, and will suffer in the future, a loss of earnings and earning capacity.

WHEREFORE, Plaintiff, Jason Marino, demands judgment against Defendant, Pilot Travel Centers, LLC, for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees, and such other just and equitable relief as this Honorable Court deems proper.

## COUNT II -- VIOLATIONS OF THE STORAGE TANK
## AND SPILL PREVENTION ACT (STSPA)
## JASON MARINO v. PILOT TRAVEL CENTERS, LLC

81. Plaintiffs incorporate the averments contained in paragraphs one (1) through eighty (80), above, as though they are fully set forth below.

82. Under the Storage Tank and Spill Prevention Act (STSPA), 35 P.S. § 6021.102 *et seq.*, Jason Marino may bring a civil action against Pilot to recover for the personal injuries he sustained as a result of the unlawful release of diesel fuel from Pilot's underground tanks. See Wack v. Farmland Industries, Inc., 744 A.2d 265, 267-268 (Pa. Super. 1999) (citing 35 P.S. § 6021.1305), *abrogated in part on other grounds by* Trach v. Fellin, 817 A.2d 1102, 1112 (Pa. Super. 2003); Centolanza v. Lehigh Valley Dairies Inc., 540 Pa. 398 (1995); Krebs v. United Refining Company of Pennsylvania, 893 A.2d 776, 786 (Pa. Super. 2006); Bruni v. Exxon Corp, 52 Pa. D. & C.4th 484, 493-494 (Ct. Com. Pl. Allegheny Cnty. 2001).[1]

83. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino sustained severe, permanent, and life-threatening injuries, including, *inter alia*: kidney failure, end stage renal disease, extreme physical pain/discomfort, severe nausea, loss of appetite, severe dizziness, fatigue, mental anguish, and depression.

84. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino has lost all functionality in both kidneys and requires a kidney transplant.

85. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino must undergo an invasive, life-saving surgical procedure and will have restrictions and risks for the remainder of his life related to living with only one kidney.

---

[1] Under the STSPA, there is a rebuttable presumption that Pilot is "liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter" of its leaking diesel fuel tanks. See Wack, 744 A.2d 265, 267-268 (*citing* 35 P.S. § 6021.1311).

86. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino has been compelled to expend large sums of money for medicine and medical attention and will expend additional sums for the same purposes in the future.

87. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino has suffered in the past, and will suffer in the future, an inability to perform his usual and daily duties, labors, occupations, and avocations.

88. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino has suffered physical pain, mental anguish, humiliation, and the loss of life's pleasures, and he will continue to suffer the same for an indefinite time in the future.

89. As a direct and proximate result of Pilot's leaking diesel fuel tanks at Plaza 710, Jason Marino has suffered in the past, and will suffer in the future, a loss of earnings and earning capacity.

WHEREFORE, Plaintiff, Jason Marino, demands judgment against Defendant, Pilot Travel Centers, LLC, for compensatory damages under the Storage Tank and Spill Prevention Act in excess of One Hundred Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees under 35 P.S. § 6021. 1305(f), and such other just and equitable relief as this Honorable Court deems proper.

### COUNT III -- NEGLIGENCE
### JASON MARINO v. SOVEREIGN CONSULTING, INC.

90. Plaintiffs incorporate the averments contained in paragraphs one (1) through eighty-nine (89), above, as though they are fully set forth below.

91. At all times material hereto, Sovereign acted by and through its employees, agents, ostensible agents, workmen and/or servants, and is vicariously liable for the reckless and negligent conduct of its employees, agents, ostensible agents, workmen and/or servants.

13

92. The reckless and negligent conduct of Sovereign, which caused Jason Marino to suffer severe, permanent, and life-threatening injuries, included, *inter alia*:

    a. Failing to warn Jason Marino of the leaking diesel fuel tanks;

    b. Failing to warn Jason Marino that hazardous diesel fuel saturated the ground which Sovereign hired Jason Marino to excavate;

    c. Failing to warn Jason Marino that Sovereign hired him to perform work involving substantial hazards to his health;

    d. Failing to inform Jason Marino of the numerous safety violations involving the underground diesel fuel tanks at Plaza 710;

    e. Failing to ensure that the soil surrounding the ruptured waterline was not polluted with hazardous diesel fuel;

    f. Failing to inform Jason Marino that the thick fluid around the ruptured waterline contained large amounts of hazardous diesel fuel;

    g. Failing to fix the leaking fuel tanks before hiring Jason Marino to work on the ruptured waterline;

    h. Failing to remediate the hazardous soil before hiring Jason Marino to work on the ruptured waterline; and

    i. Knowingly exposing Jason Marino to hazardous conditions in reckless disregard of his health and safety.

93. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino sustained severe, permanent, and life-threatening injuries, including, *inter alia*: kidney failure, end stage renal disease, extreme physical pain/discomfort, severe nausea, loss of appetite, severe dizziness, fatigue, mental anguish, and depression.

94. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino has lost all functionality in both kidneys and requires a kidney transplant.

95. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino must undergo an invasive, life-saving surgical procedure and will have restrictions and

risks for the remainder of his life related to living with only one kidney.

96. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino has been compelled to expend large sums of money for medicine and medical attention and will expend additional sums for the same purposes in the future.

97. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino has suffered in the past, and will suffer in the future, an inability to perform his usual and daily duties, labors, occupations, and avocations.

98. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino has suffered physical pain, mental anguish, humiliation, and the loss of life's pleasures, and he will continue to suffer the same for an indefinite time in the future.

99. As a direct and proximate result of Sovereign's recklessness and negligence, Jason Marino has suffered in the past, and will suffer in the future, a loss of earnings and earning capacity.

WHEREFORE, Plaintiff, Jason Marino, demands judgment against Defendant, Sovereign Consulting, Inc., for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees, and such other just and equitable relief as this Honorable Court deems proper.

## COUNT IV -- LOSS OF CONSORTIUM
## JOY MARINO v. PILOT TRAVEL CENTERS, LLC
## AND SOVEREIGN CONSULTING, INC.

100. Plaintiff, Joy Marino, incorporates the averments set forth in paragraphs one (1) through ninety-nine (99), above, as though they are fully set forth below.

101. Plaintiff, Joy Marino, as a direct result of the recklessness and negligence of Defendants and their agents, servants, work persons, ostensible agents and employees, has lost

the usual support, society, comfort and economic support of her husband, Jason Marino; has been deprived of the consortium, assistance, companionship and useful services of her husband; has been required to provide special services and care for her husband; and has been in the past, is presently, and will in the future be required to expend sums of money for medical treatment for her husband.

WHEREFORE, Plaintiff, Joy Marino, demands judgment against Defendants, Pilot Travel Centers, LLC and Sovereign Consulting, Inc., for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees, and such other just and equitable relief as this Honorable Court deems proper.

## COUNT V
## THOMAS MARINO v. ALL DEFENDANTS

102. Plaintiff, Thomas Marino, incorporates the averments set forth in paragraphs one (1) through one hundred and one (101), above, as though they are fully set forth below.

103. Plaintiff, Thomas Marino, as a direct result of the recklessness and negligence of Defendants and their agents, servants, work persons, ostensible agents and employees, has no meaningful choice other than to donate a kidney to the kidney bank in an effort to reduce the risk that his son could die or suffer other serious complications while waiting for a kidney to become available[2].

104. Thomas Marino has agreed to donate a kidney to the kidney bank and has begun the pre-surgical testing.

105. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino will sustained severe, permanent, and life-threatening injuries, including, *inter alia*: the loss of his kidney, exposure to the risks of surgery, physical pain/discomfort, fatigue,

---

[2] Jason Marino's mother is a diabetic and his brother has special needs. As such, neither are suitable donors.

16

mental anguish, and depression.

106. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino will have restrictions and risks for the remainder of his life related to living with only one kidney.

107. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino will been compelled to expend large sums of money for medicine and medical attention and will expend additional sums for the same purposes in the future.

108. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino has suffered in the past, and will suffer in the future, an inability to perform his usual and daily duties, labors, occupations, and avocations.

109. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino has and will continue to suffered physical pain, mental anguish, humiliation, and the loss of life's pleasures, and he will continue to suffer the same for an indefinite time in the future.

110. As a direct and proximate result of Defendants' recklessness and negligence, Thomas Marino has suffered in the past, and will suffer in the future, a loss of earnings and earning capacity.

WHEREFORE, Plaintiff, Thomas Marino, demands judgment against Defendants, Pilot Travel Centers, LLC and Sovereign Consulting, Inc., for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees, and such other just and equitable relief as this Honorable Court deems proper.

### COUNT VI -- LOSS OF CONSORTIUM
### LISA MARINO v. PILOT TRAVEL CENTERS, LLC
### AND SOVEREIGN CONSULTING, INC.

111. Plaintiff, Lisa Marino, incorporates the averments set forth in paragraphs one (1) through one hundred and ten (110), above, as though they are fully set forth below.

112. Plaintiff, Lisa Marino, as a direct result of the recklessness and negligence of Defendants and their agents, servants, work persons, ostensible agents and employees, has lost the usual support, society, comfort and economic support of her husband, Thomas Marino; has been deprived of the consortium, assistance, companionship and useful services of her husband; has been required to provide special services and care for her husband; and has been in the past, is presently, and will in the future be required to expend sums of money for medical treatment for her husband.

WHEREFORE, Plaintiff, Lisa Marino, demands judgment against Defendants, Pilot Travel Centers, LLC and Sovereign Consulting, Inc., for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest, attorneys' fees, and such other just and equitable relief as this Honorable Court deems proper.

Respectfully submitted,

VILLARI, LENTZ, & LYNAM

Leonard G. Villari, Esquire
Thomas A. Lynam, Esquire
Attorney I.D. No. 83817 / 68844
1600 Market Street, Ste. 1800
PNC Building
Philadelphia, PA 19103
215-568-1990
E-Mail: tlynam@vll-law.com

Dated: 8/7/14